## HUTCHESON et al. v. MASSIE.

(Court of Civil Appeals of Texas. Amarillo. Dec. 16, 1911. On Rehearing May 3, 1913.)

1. TRIAL (§ 85*)—EVIDENCE—OBJECTIONS.

An objection to evidence is properly overruled if any part thereof is competent and not subject to the particular objection urged.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 222, 223–225; Dec. Dig. § 85.*]

2. LOST INSTRUMENTS (§ 23*)—EXISTENCE OF LOST DEED—CIRCUMSTANTIAL EVIDENCE.

In trespass to try title, in which defendant claimed section 109 in F. county, Tex., through a lost deed from plaintiff's ancestor to defendant's grantor, a certified copy of a notary's record showing an acknowledgment of the ancestor and his wife to an instrument in writing running to defendant's grantor is admissible, though the record misdescribed the original grantee, and gave no description of the land, where defendant also showed that the ancestor purchased such section, that the original patentee had the same initials as that given for the original grantee, that there was no such original grantee of any land in F. county, and that the ancestor never claimed any interest in or paid any taxes on such section after the claimed deed.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. §§ 51–57; Dec. Dig. § 23.*]

### On Rehearing.

3. LOST INSTRUMENTS (§ 23*)—EXISTENCE OF LOST DEED—EVIDENCE.

In trespass to try title, in which defendant claimed under a lost deed from plaintiff's ancestor to defendant's grantor, testimony that defendant's grantor told a witness that he owned land in Texas and produced a deed to prove it, but witness could not read it because without his glasses, and testimony of the halfbrother of defendant's grantor that such grantor left home for Texas about the time of the claimed deed to work for the ancestor, and that he claimed to his brother that he there owned land, and showed him a deed, but for some reason took it from him before he had time to read it, though not admissible as direct evidence of title, is admissible if properly limited by the court to show a claim by defendant's grantor of ownership of Texas land.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. §§ 51–57; Dec. Dig. § 23.*]

Appeal from District Court, Floyd County; L. S. Kinder, Judge.

Trespass to try title by Rachel L. Hutcheson and others against W. M. Massie. From a judgment for defendant, plaintiffs appeal. Reversed and cause remanded.

Randolph & Randolph, of Plainview, and T. P. Adams, of Wichita Falls, for appellants. Stephens & Miller, of Ft. Worth, and L. W. Dalton, of Plainview, for appellee.

---

HALL, J. Appellants herein, as the heirs of Dr. Joseph Jones and wife, filed this suit in the form of trespass to try title, against appellee, to recover section 109, in block 1, in Floyd county. Appellee, claiming under C. W. Haxton, answered by general denial, plea of not guilty, and pleaded the statutes of limitations of three, five, and ten years. There was a verdict for defendant, and from the judgment based thereon the appellants bring the case to this court for review.

[1] The first, second, and third assignments of error complain of the action of the court in admitting the testimony of the witnesses Jerry Haxton and Louis A. Layman, and reference to the bills of exception upon which these assignments are based show that the objections were urged to seven direct interrogatories and one cross-interrogatory, with the answers to each propounded to Jerry Haxton, and to practically the greater part of the deposition of the witness Louis A. Layman. The objections were that the testimony was irrelevant and immaterial, and was incompetent to prove the execution and delivery of the deed to land, and that the evidence did not identify the land in controversy as having been included in the deed, and that the evidence was hearsay. It is a well-settled rule of practice that an objection to evidence should be overruled if any part thereof is competent and not subject to the particular objection urged. Reference to the bills of exception shows that the deposition of each of these witnesses contained testimony properly admissible; and, since the objections do not specify, and the assignments of error and statements following the same do not point out the particular part of the evidence complained of, the assignment must be overruled. Martin v. Ince, 148 S. W. 1178; Campbell v. San Antonio, M. & S. Co., 133 S. W. 751; Davis v. Mills, 133 S. W. 1064; Sun Mfg. Co. v. Egbert, 37 Tex. Civ. App. 512, 84 S. W. 667; Field v. Field, 39 Tex. Civ. App. 1, 87 S. W. 726.

The fourth assignment of error attacks the ruling of the court in permitting the witness Samuel Robison to detail a conversation between himself and C. W. Haxton, in which the said Haxton told the witness that he had some land in Texas that he had acquired from Dr. Jones, and he believed he could sell or dispose of it in some way, and in order to prove that he was not joking about the land, he could show witness the deed to same, and that Haxton went to his papers and took out a paper, which he handed to witness with the remark that it was the deed to the Texas land; that witness could not verify this because he did not have his glasses. This evidence was introduced to show title and the existence of a deed from Jones to C. W. Haxton.

The sixth assignment complains of the ruling of the court in permitting the witness

Marvin T. Chase to testify that C. W. Haxton told him that he went to Texas about the year 1877 or 1878, and the eighth assignment complains of the court's ruling in permitting the witness, Angie Idol to testify to the same effect. It appears from the record that these witnesses were each testifying to statements made by C. W. Haxton, deceased, with reference to his title to the land and the existence of a deed. It does not appear anywhere that Haxton was ever in actual possession of the lands, either in person or by tenant, and no deed from Joseph Jones and wife conveying the land to him has ever been placed upon record; and, the existence of the deed being denied, no constructive possession is shown. We think the statement of C. W. Haxton to said witnesses as to his ownership of the land and as to his having a deed from Jones are hearsay.

In McDow v. Rabb, 56 Tex. 155, the court said: "Ordinarily, whenever it becomes important to prove that a man did any act, whatever he may have said about the act while it was being done is admissible as a part of the act. 1 Greenl. 108, 109. But this rule should not be unnecessarily extended, as it may enable a party to make evidence for himself in the absence of his adversary," and the court sustained the trial judge in excluding declarations of one Gates, to the effect that he had bought the lands from Rabb.

In the case of Mooring & Lyon v. McBride, 62 Tex. 309, it was necessary for appellees, in order to recover, to prove that one Bauguss was the owner of the land at the time they purchased it under the execution against him, or that he had some interest therein, subject to execution, which passed by the sale at which they purchased. This they attempted to do by proof of declarations made by Bauguss while he was in possession of the land. The sole purpose for which the declarations were admitted, in so far as they related to the execution of a title bond by Blaydes to Bauguss, was to prove title in Bauguss. Stayton, associate justice, said "that the declarations of one in possession as against those who claim through him may be used for certain purposes is well settled. Thus were this an action by the appellees, who hold by deed directly from Blaydes, it would be admissible for them, in an action against one claiming through Bauguss, to prove the declarations of Bauguss, made while in possession, that he held through an executory contract made with Blaydes, and so, for the purpose of proving that Bauguss did not assert a title in fee to the land, and to show the character of claim he did assert. * * * But, we know of no case in which such declarations were admitted for the purpose of showing title in the declarant."

In Gilbert v. Odum, 69 Tex. 670, 7 S. W. 510, the court uses this language: "It is insisted that there was error in refusing to admit the testimony of F. C. McReynolds,

offered both before and after the deposition of Louis King had been read by defendants, to the effect that about the time of the purchase of said property, and also when Louis King was in possession of the premises, he informed the witness that he furnished the money, and that the property was purchased for him. This assignment is predicated on plaintiff's third bill of exceptions, from which it appears that he proposed to prove the admissions and declarations of Louis King to McReynolds; but it does not appear what the declarations and admissions were that the witness would testify to, and therefore it is impossible for us to know whether material or not, if otherwise unobjectionable. But if the bill of exceptions was sufficient, it is not perceived for what purpose the declarations of Louis King, while in the possession of the premises or at any other time, were offered in evidence, except as tending to prove title in himself, for which purpose they were not admissible. * * * Nor would the fact that said Louis King had testified in the case at the instance of defendants make his declarations, which were otherwise incompetent, admissible in evidence."

The *claim* under which real property is being held by a declarant may be shown by declarations indicative of a relevant animus. But the declarations are incompetent as direct evidence of the facts asserted, for as to the general history of the declarant's title in favor of his privies, as to the facts asserted, the declarations are hearsay. 16 Cyc. 1166–1168. In view of another trial, it is proper for us to state that testimony of a like character, found in the depositions of Jerry Haxton and Louis A. Layman, should be excluded upon proper objections, if offered to prove title in appellee or to prove possession of a deed from Jones.

[2] Appellants by their ninth assignment of error attack the action of the court in permitting the introduction in evidence of a certified copy of the notary's record, which shows that on January 14, 1878, Julius Royar, a notary public of Dallas county, took the acknowledgment of Joseph Jones, and on the 28th of the same month took the acknowledgment of Ann E. Jones to an instrument in writing. These further facts appear from the certified copy. "Location of land and original grantee, Floyd county; H. A. & J. L. King. Name and residence of grantee. C. W. Haxton, Attica, Ind." Appellants objected to the certified copy, because it did not refer to and identify the land in controversy; was not even a circumstance showing the conveyance of or the acknowledgment of any conveyance of the land in controversy; that the land in controversy is section 109, patented to H. A. & J. L. Cagle, original grantee, Adams, Beatty & Moulton, and the certified copy describes the land as situated in Floyd county, and gives the name of the original grantee as H. A. & J. L. King, all of which objections were overruled. Appellee, in con-

nection with this certified copy, introduced evidence tending to show that Joseph Jones had previously purchased section 109, in block 1, in Floyd county, together with other lands, and introduced evidence showing conveyances of all the lands so purchased by him except section 109; that there was no such original grantee to any land as H. A. & J. L. King found in Floyd county; that Jones had paid no taxes upon section 109 since its sale; had never occupied it, nor exercised any act of ownership with reference to it. It being the settled law of this state that the execution and contents of a lost deed may be established by circumstantial evidence (Bounds v. Little, 75 Tex. 316, 12 S. W. 1109), we think this testimony was admissible as a circumstance in connection with other evidence introduced by appellee, tending to show the existence of the deed as claimed by him. The court did not err in excluding the evidence relating to appellee's tax deed and the cross-assignment is overruled.

Since by reason of the errors pointed out it is necessary to reverse the judgment and remand the cause for another trial, it is not proper for us to discuss the sufficiency of the evidence to sustain the verdict and judgment, and for this reason we do not pass upon the eleventh assignment of error.

For the errors pointed out, the judgment is reversed and the cause remanded.

### On Rehearing.

[3] Appellee in motion for rehearing has referred us to additional authorities sustaining his contention that in the original opinion we erred in sustaining the fourth, sixth, and eighth assignments. The motion also attacks the sufficiency of the brief in presenting the question urged by these assignments. We waived the deficiencies in the brief in our original consideration of the case, when possibly they should have been sustained, since it appears that the assignments are subject to most of the objections urged against them. Upon further consideration of the issues and a review of the numerous authorities submitted by appellee, we have concluded that we were correct in holding that the testimony of Samuel Robison, Marvin T. Chase, and C. W. Haxton were not admissible to show title, but that we are in error in holding that this testimony was not admissible as evidence of the existence of a deed from Jones to Haxton, and of the fact that Haxton was asserting a claim to land in Texas, and was claiming to have a deed to land in Texas from Dr. Joseph Jones.

The evidence of Samuel Robison upon this question is, in substance, as follows: "I was acquainted with Dr. Joseph Jones, who was formerly a resident of Attica, Ind. * * * I kept up my acquaintance with him as a man and a citizen until he and his family left Attica, which was about 1875. I had no talk with him as to where he was going. I got acquainted with him about the year 1867.

I was acquainted in his lifetime with C. W. Haxton, who was Chas. W. Haxton. I first got acquainted with Haxton soon after I came back to Attica from Delphi, Ind., about 1871, and was acquainted with him from that time until he died, which was about 1902. I was formerly in the bakery and restaurant business in Attica in the early 70's, and used to see Haxton nearly every day, and he would occasionally buy a meal in my place, and I bought the daily papers of him; that being his business in part. About 1885 Haxton boarded in my restaurant for a period of three or four months continuously. I saw him frequently, talked to him often, and knew him well. Haxton left Attica in about 1875 or 6 and was gone about a year." The particular part of the witness' testimony to which objection was made, as set out in the bill of exception, is as follows: "That C. W. Haxton went to Texas, and further that in 1886 the said Haxton owed said witness a bill of between $7 and $8, and witness asked him to pay it; that Haxton said he had some furniture in his rooms that he would turn over to me; that said Haxton said he had some land in Texas that he had gotten from Dr. Jones, and he believed he could sell or dispose of it in some way; that said witness said in order to prove that he was not joking about the land he could show witness a deed to same and went to his papers and took up a paper, which he handed to witness with the remark that it was the deed to the Texas land; that witness could not verify this because he did not have his glasses. "The objection made to this testimony is that it was hearsay, a declaration of the party in his own interest, irrelevant, immaterial, and was incompetent to prove the existence of a deed from Dr. Jones and wife, plaintiff's ancestors, and that said evidence in no wise identified the land in controversy as being included in the deed.

The testimony of Jerry Haxton, objected to, is set out in the bill of exceptions as follows:

"Interrogatory No. 4. If in answer to the preceding interrogatory you have stated that you knew Joseph Jones in Attica, Ind., or Indianapolis, Ind., in the early 70's, and that said Jones and family left there for Texas about 1875, then what, if anything, impresses said fact on your mind? State fully. A. I knew Dr. Jones in Attica, but I never knew him in Indianapolis. I remember my brother, Chas. W. Haxton, went to Texas to take some horses and other property for the doctor, and I know that my brother was in Texas between a year and two years, and that he returned the latter part of 1876, or the early part of 1877, and I fix that date by the fact that the following summer—that is, the summer of 1877—Anna J. Haxton, my brother's daughter, was married to Louis A. Layman at my home; further, the Wabash river had an overflow in the summer of 1875, the water touching high-water mark, and I am reasonably sure that Dr. Jones was not in Attica at that time. From all the above, it is my best judgment, after studying over the matter, that the doctor left Attica in the early 70's."

"Int. No. 6. If in answer to the preceding question, you have stated that you knew C. W. Haxton at or near Attica, Ind., in 1873 or 1874, or thereabouts, then state whether said C. W. Haxton continued to reside at said place, and if you say that he did, then state when he left Indiana; state where he went, if you know, and state with whom he went, if you know. Answer fully, and state how you know such facts as you have testified to. A. My halfbrother, Chas., or C. W. Haxton, left Attica about 1875, and went to Texas. He took some horses and some personal property, all belonging to Dr. Jones, to Texas, to take care of them for him. He took his daughter, Anna J. Haxton, with him. She was at that time an unmarried girl. He was gone between a year and two years, and it was my understanding from him after he returned that he was in Texas all of that time. I know the above facts because C. W. Haxton left his residence here in Attica and was gone that time, and when he returned he told me and numerous friends that he had been in Dallas, Tex., with Dr. Jones.

"Int. No. 7. If in answer to the preceding question you have stated that C. W. Haxton left Indiana for Dallas in Dallas county, Tex., in company with Joseph Jones, about 1875, then state how long said C. W. Haxton lived in Dallas, Tex. Do you know what he was doing while there? If you have stated that he was working for Dr. Joseph Jones when in Dallas, then state how you know such facts. Answer fully. A. It is not my recollection that my halfbrother left Indiana with Dr. Jones. I think Dr. Jones went before he did, and that the doctor wrote to my halfbrother, telling him to get the property and have it shipped through to Dallas, and to go with it and take care of it. My information from my halfbrother is that he lived in Dallas, Tex., during all the time he was away from Attica, and while living in Dallas, Tex., he worked for Dr. Jones. My halfbrother told me that Dr. Jones ran a hotel in Dallas, and that he did general work for him around the hotel. I only know those facts by what my halfbrother told me. I did not know it personally.

"Int. No. 8. If in answer to the preceding question you have stated that C. W. Haxton returned to Indiana during 1877 or the latter part of 1876, then state how you know such facts. State where you lived during the years 1877 and 1878 with reference to the residence of said C. W. Haxton, and state any facts or circumstances that you may remember that impresses on your mind any date you may have given in this answer. A. My halfbrother lived in Attica continuously for a number of years directly after he returned from Texas, and as I recall that

he returned in the latter part of 1876, or the first of 1877, I know that he was living in Attica during all of 1878 and during most of 1877."

"Int. No. 13. State whether or not your said brother during his lifetime owned any land in Texas. If yea, state how you know such fact. If you have stated that you have seen the deed to your brother to his section of land or to land in Floyd county, Tex., or anywhere in Texas, then state how often you saw such deed. State whether or not your said brother claimed to own more than one tract of land in Texas. Have you said deed? If yea, please attach the same to your answers hereto; have the notary public mark the same for identification. If you state the said deed is not in your possession, then state, if you know, where it is. Have you made any search for same? If yea, state the extent of your search and inquiry for said deed. If you say that said deed cannot be found, then state to the best of your recollection the contents of same. A. My halfbrother in his lifetime claimed that he owned some land in Texas, and about 1882 he showed me a paper which he said was for a piece of Texas land, and said that some day it would be worth something, but that it was not worth very much now. I started to take the deed and read it and had one hand on the paper, when for some reason he took it away from me and folded it up and put it away with his papers so I did not get to read the deed; did not know anything about the description of the land nor in what county it was located, nor who deeded it to him. I never saw the deed but once after that, and that was about three or four days before he died. At that time, at the place where we were living together, one evening he had a number of papers in his hand, and stated that he was going to burn all the papers that he had. Three or four days after that occurrence I asked him what he had done with the Texas deed, and he said, 'Ashes tell no story,' and that is all that was said about it. I have not got the deed, and if it was not burnt at the time I have just related I do not know where it is. I have made a thorough search for the deed and have never been able to get any trace of it.

"Int. No. 14. State whether or not your said brother at any time while living with you or during the 90's discussed the fact of his ownership of the land in Texas. If yea, state fully what he told you with reference to same. A. During the 90's my halfbrother discussed the ownership of land in Texas, but he never gave me any details, so I never knew, and do not know now, where this land is that he claimed to own, excepting that it is in the state of Texas."

"Int. No. 16. If you have stated that during the time that you and C. W. Haxton, about 1897 or '98, or about that time, that you saw a deed to your brother to certain land in Floyd county, Tex., or elsewhere, in Texas, and that your brother discussed the fact of such ownership with you, then state whether or not said deed had been recorded; state fully how you know this. A. I saw the paper which my halfbrother Charlie claimed was the deed for a section of Texas land, as I have answered above, but whether it was recorded or not I do not know, for the reason that I was not permitted to read the deed carefully by him, as I have stated above."

"Cross-Int. No. 4. If you state that you were acquainted with Dr. Joseph Jones and with one C. W. Haxton, and that said C. W. Haxton went to Dallas, Tex., in company with Dr. Jones, then give the exact date of his going with Dr. Jones to Dallas, Tex. How came he to go, and was there any one else who went with them at that time, and give the name or names of such party or parties? A. I cannot tell the exact time when my halfbrother went to Texas, but it was about 1875. He did not go with Dr. Jones, but went afterwards, as I understood it. He was written to by the doctor to take some horses and other property to Texas for him."

The objections urged to this testimony were that it was irrelevant and immaterial; that it was incompetent to prove the execution and delivery of a deed to land; that it did not identify the land in controversy as having been included in the deed. The testimony of Marvin T. Chase and Angie Idol that they knew from the statements of C. W. Haxton, of Dr. Joseph Jones and Mrs. Jones, that Haxton lived a year or more in Dallas, and worked as stableman for Dr. Jones. This testimony is not admissible for the purpose of showing the truth of the matters declared by C. W. Haxton; that is, that he really did own the land in Texas, and that Jones and wife had given him a deed thereto, but it was admissible alone to show a claim on his part, and the trial court should have limited the evidence to that purpose in his charge, and upon his failure to do so, it is the right of the party against whom such testimony is offered to have the court so limit it, by requested instruction. That part of the original opinion in which we have held that by reason of the fact that no possession was shown the evidence was inadmissible on that account is withdrawn, and the rule announced in the following cases should control the trial court in another trial: Hickman v. Gillum, 66 Tex. 314, 1 S. W. 339; Wells v. Burts, 3 Tex. Civ. App. 430, 22 S. W. 419; Arthur v. Ridge, 40 Tex. Civ. App. 137, 89 S. W. 15; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033; Walker v. Pittman, 18 Tex. Civ. App. 519, 46 S. W. 120; Grayson v. Lofland, 21 Tex. Civ. App. 503, 52 S. W. 121; Baldwin v. Goldfrank, 88 Tex. 249, 31 S. W. 1064.

The judgment is reversed, and the cause remanded.