## REED et al. v. MAGNOLIA PETROLEUM CO. et al.

### No. 4286.

Court of Civil Appeals of Texas. Texarkana.
Feb. 17, 1933.

Rehearing Denied March 2, 1933.

Cantey, Hanger & McMahon, of Fort Worth, and Futch & Weldon and V. W. McDavid, all of Henderson, for appellants.

Walace Hawkins and W. H. Francis, both of Dallas, Brachfield & Wolfe, of Henderson, Lasseter, Simpson & Spruiell, of Tyler, Woolworth & Baker, of Carthage, John A. Braly, of Fort Worth, Young & Wynne, of Henderson, C. S. Hardwick, of Dallas, R. E. Seagler, of Houston, T. L. Foster, J. W. Timmins, Martin A. Row, C. H. Machen, and R. W. Gray, all of Dallas, C. L. Stone, of Henderson, and Clay Cotten, of Palestine, for appellees.

JOHNSON, Chief Justice.

This is an appeal from a judgment of the district court of Rusk county in an action of trespass to try title filed by appellants, Bell Reed and R. L. Duncan, on February 28, 1931, for the recovery of a tract of 112 acres of land located in Rusk county, Tex., for rents, damages, and asking for an accounting of minerals produced from the land. The forty defendants were Mrs. J. C. Bradberry, the widow of J. C. Bradberry, deceased, his heirs, and those persons and corporations claiming under them. Plaintiffs specially

pleaded that in or about the fall of 1888 or 1889 Bell Reed was then the owner of the land and rented it to J. C. Bradberry; that Bradberry moved on the land, agreeing to pay the taxes, keep the place up, and have the right to cut timber thereon, and should pay Bell Reed as rental $35 per year as long as he occupied it; that it was understood between them that Bell Reed was going away, "out West," for an indefinite time, and such tenancy should continue from year to year at the will of Bell Reed; and that, as such tenant, J. C. Bradberry with his family lived on the place until he died, about the year 1924, since which time the place has been occupied by the widow and heirs of J. C. Bradberry, deceased. The plaintiffs further pleaded the five and ten years' statutes of limitation, and claimed an ouster by defendants as of December 11, 1930. The pleadings of the defendants consisted of joint and separate answers, containing general demurrer, general denial, plea of not guilty, and specially pleading title by reason of the five, ten, and twenty-five years' statutes of limitation. The trial was to a jury, and the court submitted, among others, the following instructions and issues:

"(3) You are instructed that the term 'peaceable possession' as used in this charge, means that such possession was continuous and not interrupted by adverse suit or suits to recover the estate.

"(4) You are further instructed that the term 'adverse possession,' as used in this charge, means an actual, visible appropriation of the land sued for and that such possession was commenced and continued under a claim of right inconsistent with and hostile to the claim of the plaintiffs and all other persons.

"Special Issue 1. Do you find from a preponderance of the evidence in this case that J. C. Bradberry purchased through written conveyance from Bell Reed the 112 acres of land on the R. W. Smith Survey in Rusk County, Texas, in controversy in this suit? Answer: No.

"Special Issue 3. Do you find from a preponderance of the evidence in this case that J. C. Bradberry entered into a rental contract with Bell Reed, and went into possession of the 112 acres of land in controversy in this suit, under such contract? Answer: No.

"Special Issue 5. Do you find from a preponderance of the evidence in this case that the defendants, and those under whom they hold and claim, have held peaceable and adverse possession of the land in controversy in this suit, cultivating, using or enjoying the same for any period of ten years before the commencement of this suit? Answer: Yes."

Upon the findings of the jury the court entered judgment against plaintiffs and in favor of the defendants for the land sued for, from which judgment plaintiffs have appealed.

Appellants' assignments of errors 1 to 8, inclusive, are directed at special issue No. 5 in the court's charge submitted to the jury. Determined by the defendants' pleadings, the evidence in support thereof, the definitions given by the court in its charge to the jury in connection therewith, the issue is correctly stated, and the affirmative answer of the jury thereto entitled the defendants to the judgment of the court entered thereon vesting title to the property in defendants. The issue is not duplicitous as complained of in appellants' assignments 1 and 2 by reason of containing the terms "peaceable" and "adverse." These terms are distinct, but not disjunctive elements of the ultimate fact issue. It is necessary that they run concurrently, and, where the period of occupancy claimed is more than ten years, the issue or issues submitted should, in the words of the statute, or other appropriate language, require the finding of the jury to include their coexistence. In this case it is not questioned that Bradberry and his family was in continuous possession, using and enjoying the land for more than forty years before this suit was filed. If the first ten years were peaceable but not adverse, and a subsequent ten years were adverse but not peaceable, and the two elements were submitted separately, the jury may have answered each of the two questions in the affirmative without involving a finding of whether they ran concurrently.

By their assignments 3 and 4 appellants asserted that it was error for the court to submit issue No. 5 to the jury, because there was testimony undisputed by him that J. C. Bradberry had oftener than once during every ten years of his possession of the land, in conversation with disinterested persons, stated that he was holding the land as the tenant of Bell Reed. There is testimony in the record by witnesses not connected with the title, and one or more during each ten-year period, testifying that J. C. Bradberry in conversation with them had made statements to the effect that he had rented the place from Bell Reed for $35 per year, paid the taxes, and kept up the place, until Bell Reed returned and wanted it; and this testimony was undenied by J. C. Bradberry at the trial —he was dead. However, this testimony of these casual conversations is not that character of testimony which in effect estops the claimants from denying the break in, or proving the continuousness of, his claim. It was only evidentiary in character, and in this case related, first, to the issue of tenancy, No. 3 of the court's charge, and which the jury answered in the negative; and, second, to be weighed by the jury in connection with the testimony of the defendants relating to the adverse character of Bradberry's possession. Issue No. 5 as submitted by the court

is not wanting, as complained of in appellants' assignments 5 and 6, in the element of continuousness, when read in the light of the definitions of "peaceable possession" and "adverse possession" given in connection therewith in the court's charge instructing the jury to be governed thereby. And we cannot presume that the jury ignored these definitions and instructions of the court, which presumption would be necessary to sustain appellants' assignments 7 and 8 to the effect that this issue as submitted was calculated to mislead the jury into believing that the terms "peaceable" and "adverse," as applied to possession, are synonymous. The fact that there was no evidence opposing the contention of the defendant that J. C. Bradberry and those claiming under him had peaceable possession, did not make it error or misleading for the court to submit to the jury the element of "peaceable" possession, as complained in appellants' eighth assignment of error; for the defendants pleaded it, and it was a necessary affirmative element of the ultimate fact issue to be found by the jury before title could vest in defendants under their plea of limitation, unless it had been admitted by plaintiff or waived and found by trial court. By their 12th, 13th, 14th, and 15th assignments appellants assert that it was error to enter judgment for the defendants upon the jury's finding in answer to special issue No. 5 because the jury had answered issues Nos. 1 and 3 in the negative; that by their answer to special issue No. 1 the jury having found that defendants failed to establish their claim of title by written conveyance from Bell Reed, and the jury having in answer to special issue No. 3 rejected the plaintiffs' claim that Bradberry went into possession as a tenant of Bell Reed, and thus having rejected the contention of both the plaintiffs and the defendants, relative to their respective theories under which Bradberry went into possession of the land, therefore defendants' claim of title by limitation of ten years fell. We do not agree with this contention. It is not inconsistent nor contradictory for defendant in an action in trespass to try title to plead and prove title by limitation, and at the same time attempt to prove title by purchase and written conveyance; and the failure to establish the latter does not defeat the former. Title by statute of ten years' limitation is an independent plea, and is not dependent upon establishing the legal strength of facts upon which the claimant bases his claim under which he went into possession. In Charle v. Saffold, 13 Tex. 94, 111, Chief Justice Hemphill says: "The circumstances under which the possession is taken are altogether immaterial to the right, provided the occupant claim for himself and adversely to others."

■ Appellants' twenty-fifth assignment of error complains of the action of the court in refusing to give to the jury plaintiffs' requested issue No. 5, reading as follows: "Do you find from a preponderance of the evidence in this case that J. C. Bradberry and those claiming under him, did oftener than once every 10 years of Feb. —, 1931, state in conversation to any person that Bell Reed owned the land, and that he, Bradberry, was a tenant?"

To support this assignment, appellants cite us to the case of Collins v. Megason (Tex. Civ. App.) 228 S. W. 583, 584, where the refusal of a special issue, in some respects similar to the one above quoted and requested by plaintiff, was under consideration, and Chief Justice Willson correctly said: "There is ample authority for the proposition that 'interruption * * * of the continuity necessary to acquire title by prescription occurs when the adverse claimant recognizes the title of the disseisee,' and for the proposition that the possession of such a claimant on such recognition 'ceases * * * to be adverse, no matter how hostile it may previously have been, and limitation does not again begin to run against the person whose title is acknowledged until the claimant repudiates his title.' There is also authority for saying, where the pleadings and testimony make such an issue, it is error to refuse a requested correct special charge embodying the propositions set out above when the cause is submitted to the jury in a general charge. * * * Acquiescing in the correctness of the authorities referred to, whether the assignment should be sustained or not depends on the answer which should be made to two questions. First. Did the pleadings and the testimony * * * make such an issue? * * * Second. Was the refused charge a correct one when considered with reference to the pleadings and the testimony? * * * If it was not, it was not error either to refuse it or to fail to prepare and give a correct charge in lieu of it, for the court with reference to the issue to which it was applicable, correctly instructed the jury."

It will be noted that in the case at bar we have already held that the court correctly submitted the issue to the jury in special issue No. 5 of the court's charge. In the Collins Case the court found, first, that the plaintiff, in reply to the defendants' plea of title by limitation, had specially pleaded defendant's recognition of plaintiff's title during the time of his alleged adverse possession; second, that these pleadings were supported by the testimony of plaintiff Mrs. Collins, to the effect that at a time when the question of title was under consideration between defendant and plaintiff that defendant admitted to plaintiff that he knew her deceased father, under whom she held title, owned the land, and that he did not claim it against her and the other heirs of her father, and that defendant thereupon entered

into an agreement with her whereby he undertook to pay her rent and for timber, and to move off the place in the fall of that year, and whereby she undertook to pay him for improvements he had made; third, that the special issue prepared and presented by the plaintiffs was correctly stated. When applied to the above rules, we find appellants' assignment wanting in several material respects. Plaintiff in case at bar did not plead the reply as was pleaded in the Collins Case to defendant's plea of limitation. Second, the testimony in the case at bar does not of itself establish that kind of recognition of title, as when the title is brought into question, or is under consideration between the defendant and the plaintiff or his agent, and which in effect estops the defendant from denying the break in, or asserting the continuity of, his adverse possession. The testimony in this case is that of witnesses to the effect that Bradberry, in casual conversation with them, stated that he had rented the place from Bell Reed, and it is only evidentiary in character, supporting plaintiffs' claim of tenancy submitted to the jury by the court in issue No. 3, and disputing defendants' claim of adverse possession, submitted by the court to the jury in issue No. 5. Third, the requested issue as framed and presented by the plaintiffs in this case is not correct, in that there is no testimony in the record that "those claiming under him (J. C. Bradberry)," there being some thirty-eight of such, ever at any time stated that "Bell Reed owned the land," and "that Bradberry was a tenant"; and we do not find in the record any testimony where Bradberry stated in conversation with any person that "Bell Reed owned the land." The issue as framed presented, in effect, an effort to control and give to testimony a legal effect not authorized in the case. The assignment is overruled.

■■ The testimony of Mrs. J. C. Bradberry, that her husband, J. C. Bradberry, deceased, told her that he had made a contract with Bell Reed and his mother for Bell Reed's part of the land, was admissible on the issue of the adverse character of Bradberry's possession. Hickman v. Gillum, 66 Tex. 314, 1 S. W. 339; Wells v. Burts, 3 Tex. Civ. App. 430, 22 S. W. 419; Texas & N. O. Rwy. v. Broom, 53 Tex. Civ. App. 78, 114 S. W. 655; Whittaker v. Thayer, 48 Tex. Civ. App. 508, 110 S. W. 787; Bishop v. Paul (Tex. Civ. App.) 217 S. W. 435. By their 54th, 55th and 56th assignments of errors, appellants complain that the court erred in excluding, as against defendant Magnolia Petroleum Company, the testimony of three witnesses offered by plaintiffs, to the effect that some time in the early part of 1931 before the plaintiffs filed this suit at several different points in Texas they heard over the radio a broadcast inquiring of the public as

to the whereabouts of Bell Reed, and stating that if he could be found to have him communicate with the Magnolia Petroleum Company of Dallas. There is no fact offered in connection with this proposed testimony imputing ownership of the radio, agency on its part, or knowledge on the part of the Magnolia Petroleum Company with reference to the announcement made by radio. The fact that it was made by some person by means of the radio would not take it out of the rule of hearsay. 1 R. C. L. 482; 17 Tex. Jur. 536. The case of Western Union Telegraph Co. v. Campbell (Tex. Civ. App.) 212 S. W. 720, cited by appellants, is not authority for the contention made by appellants in this assignment.

Having duly considered each of appellants' assignments of errors, and finding no error on which the case should be reversed, the judgment of the trial court is affirmed.