Sun Manufacturing Co. v. Egbert & Guthrie.

Decided December 24, 1904.

**1.—Damages—Breach of Contract—Loss of Profits.**

Where plaintiff contracted with defendants to manufacture and deliver to them a certain number of spring motors at a stated price and failed to do so, defendants were entitled to recover as damages the profits on sale of motors which they would have consummated had plaintiff complied with the contract, they having obtained offers and received orders for motors which had to be rejected because of plaintiff's default.

**2.—Same—Evidence—Objection.**

Where some part of the evidence offered by defendants tended to show that an order had been obtained or an offer made for one or more motors at a price which would have given them a profit, an objection to the whole evidence was properly overruled, even though other portions of it were too indefinite.

**3.—Same—Letters—Proof of Signature.**

Defendants having offered in evidence a letter from one G. containing an offer to purchase motors, it was not necessary for them to prove the handwriting of G. or the execution of the letter where the proof showed that G. had been to see them about the matter and two or three more letters had passed between them on the subject, and the one in question had been received in due course of mail.

**4.—Same—Avoidable Consequences.**

The loss of profits being the true measure of damages, and this loss, to a great extent at least, having been already incurred before plaintiff offered to furnish the motors at a price something higher than that stipulated in the contract, such offer did not make the doctrine of avoidable consequences applicable in the case.

**5.—Same—Cash Offers and Contracts for Future Delivery.**

Defendants were as much entitled to damages for loss of profits on cash offers for immediate delivery, which could not be accepted because of plaintiff's failure to furnish the motors, as on binding contracts for motors to be delivered by them at a future time.

**6.—Same—Estoppel—Acceptance After Time Stipulated.**

The fact that the motors for which the notes sued on were given by defendants were received after the time stipulated in the contract for their delivery did not estop defendants from claiming damages for the total failure to deliver the other motors contracted for and to be delivered to defendants at a later date.

Appeal from the District Court of Cooke. Tried below before Hon. D. E. Barrett.

*Stuart & Bell,* for appellant.

*Culp & Giddings,* for appellees.

STEPHENS, Associate Justice.—One E. L. Garvey seems to have invented a spring motor, known as the Garvey motor, on which he obtained a patent, and after assigning his rights under the patent to the appellees, Egbert & Guthrie, who resided at Gainesville, Texas, went to Greenfield, Ohio, seemingly in their interest, where he placed an order with appellant for the manufacture for them of five hundred Garvey

motors at $11.50 each, to be shipped as follows: 100 on March 1, 1900, 150 April 1, 1900, and 250 May 1, 1900. The date of this contract was December 27, 1899. Three days later Garvey entered into a written contract with appellant on his own account in which he represented himself to be the owner of the patent, and which contained terms much more favorable to appellant in the manufacture of the motors than those specified in the order placed with it for appellees. In a letter to Garvey of same date, addressed to him at Gainesville, Texas, appellant promised Garvey one dollar of the $11.50 charged appellees for the manufacture of each motor.

Appellant undertook to manufacture the motors for appellees at the price named and appellees undertook to sell them on the faith of appellant's agreement to furnish them as specified in the order, which undertaking on the part of appellees, appellant, as well as appellees, had in contemplation when it accepted the order. Appellant, though repeatedly urged by appellees to forward the motors according to contract, never sent any until the latter part of April, 1900, and then sent only a few, much less than the number to be delivered in March, and even these seem to have been somewhat defective in construction. Finally, after delaying appellees for several months with excuses and unfulfilled promises, appellant, finding that it could not manufacture the motors at the price named in the order without a loss, flatly refused to manufacture any more for appellees unless they would consent to add two dollars to the price of each motor. This appellees declined to do, and, when appellant sued to recover the balance due for those delivered, pleaded in reconvention for damages and recovered two hundred and fifty dollars more than the amount of appellant's claim, for which they admitted liability in order to obtain the opening and conclusion. The damages claimed consisted of profits on sales of motors which appellees would have consummated if appellant had furnished the motors according to contract, they having obtained from various persons orders and received offers for motors which had to be rejected in consequence of appellant's default.

That profits are recoverable in such cases seems to be the law in this State as well as in many others. For a recent discussion of the question, with an extended review of the authorities, see the opinion of the Supreme Court of Tennessee in the case of Chisholm & Moore Co. v. U. S. Canopy Company, 77 S. W. Rep., 1062.

Various rulings are complained of in the admission of testimony tending to show what profits appellees lost in consequence of appellant's failure to furnish the motors, but we have been unable to sustain any of the numerous assignments complaining of these rulings. In each instance some portion of the evidence offered tended to show that an order had been obtained or an offer made for one or more motors at a price which would have given appellees a profit, and if other portions were too indefinite the objection to the whole was properly overruled. The first and most plausible of these assignments complains of the admission in evidence of a letter from M. C. Gillette to Egbert & Guthrie, dated March 3, 1900, and reading: "Your favor to hand and

beg to say that I will take an agency. I have my money all tied for a while, but to satisfy you in the matter, I have a block of lots here that I will secure you with, also eight portable founts in your city in care of Jake Schwarz that cost me over two hundred and fifty dollars. I will take up your entire amount in thirty days anyway if you can furnish the machine for me. As soon as you can send me a sample outfit, I can close the deal for all the orders I have taken, on the condition of the machine running satisfactory, so that I can forward the orders to factory as early as possible. I will order ten or twelve for Dublin and possibly the same for Stephenville." The first ground of objection was that the handwriting of Gillette and the execution of the letter had not been proved, but this was not necessary, since Gillette had been to see appellees about the motor and two or three or more letters had passed between them on that subject and the letter in question was received in due course of mail. The other objections are sufficiently covered by what we have already said.

The first, second and eighteenth special charges requested by appellant were properly refused because the loss of profits was the true measure of damages in this case, and this loss, to a great extent at least, had already been sustained when appellant offered to furnish the motors at an advanced price. The doctrine of avoidable consequences was inapplicable to the facts of this case.

The ninth and twelfth special charges were properly refused because the issue intended to be submitted by these charges was not raised by the evidence, as appears even from the statement made in support of the assignments.

The fourteenth special charge was properly refused because appellees were as much entitled to damages for the loss of profits on cash offers for immediate delivery which could not be accepted because of appellants failure to furnish them as on binding contracts for motors to be delivered at a future time.

The eleventh and fifteenth special charges were properly refused because if Garvey, as agent for appellees, made any guaranty to appellant, it should have been included in the contract of December 27, 1899, and because the representation referred to in the latter charge was but a matter of opinion and would not bind appellees.

The contract between appellant and appellees, although made by Garvey as their agent, was separate and distinct from the one between appellant and Garvey, which the manager of appellant admitted was subsequently made. The court therefore did not err in the second and third sections of the charge, nor in refusing the seventh special charge. Besides, in the fifth paragraph of the court's charge, of which no complaint is made, the contract between Garvey and appellant was expressly excluded from the evidence.

Clearly, the fact that the motors for which the notes sued on were given were received after May 1, 1900, did not estop appellees from claiming damages for the failure to deliver the rest, and the court consequently did not err in refusing the third special charge.

The verdict of the jury is complained of in several assignments, but while the evidence is not altogether satisfactory, we are constrained to

overrule these assignments. The record suggests the idea that appellees undertook to make a profit out of an invention which perhaps proved to be of little or no practical value, so that if appellant had fully carried out its contract and delivered the whole five hundred motors appellees might have sustained a loss rather than made a profit on the venture. This phase of the issue, however, does not seem to have been distinctly and fully developed in the trial court and is barely brought to our attention, if at all, in the brief. The twentieth assignment seems broad enough to cover it, but the statement referred to under it seems to touch it very lightly. On the other hand, there was evidence tending to prove that the fault was in appellant's construction of the motor, and that this, rather than the quality of the invention, caused some of them to be rejected as worthless.

Failing to find any ground on which to rest a reversal, we must affirm the judgment.

*Affirmed.*

Writ of error refused.