### CALDWELL OIL CO. v. HICKMAN et ux.
(No. 6840.)

(Court of Civil Appeals of Texas. Austin. Feb. 18, 1925.)

**1. Judgment ⚫145(4)—Motion to vacate default judgment held to state meritorious defense.**

On motion to vacate default judgment for employee's injuries, allegations of employer's membership in insurance association of which employee had knowledge, requiring him to look to insurer for damages, and further showing of facts in defense to common-law cause of action and excessiveness of award, held to sufficiently show meritorious defense.

**2. Judgment ⚫143(2) — Default judgment may be set aside if good excuse for negligence is shown and meritorious defense pleaded.**

Default judgment may be set aside on showing of grounds excusing apparent laches and showing meritorious defense, notwithstanding defendant's negligence.

**3. Judgment ⚫138(3)—Corporation's failure to answer held not excused, and court did not abuse discretion in refusing to open default.**

Where citation commanded service of summons on defendant corporation and its president and secretary and treasurer, service on secretary and treasurer alone, who thereafter went to Mexico, did not excuse defendant's failure to answer, where president and corporation's attorney had actual notice of suit in time to answer, and court did not abuse its discretion in refusing to open default.

**4. Judgment ⚫437—Equity will not relieve default resulting from negligent inattention or mistake of counsel not caused by opposite party.**

Equity will not relieve default resulting from negligent inattention or mistake of counsel not caused by opposite party, but will do so only in cases where party has been deceived or betrayed by his counsel, or in some cases of misapprehension or misunderstanding arising from misinformation.

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Caldwell County; M. C. Jeffrey, Judge.

Action by Frank Hickman and wife against the Caldwell Oil Company. From an order overruling defendant's motion to set aside a default judgment for plaintiffs, defendant appeals. Affirmed.

Jno. N. Gambrell, of Lockhart, for appellant.

BLAIR, J. This is an appeal from an order overruling a motion to vacate and set aside a default judgment. The following is the history of the case:

On October 11, 1923, Frank and Annie Hickman, husband and wife, and Frank Hickman as next friend of their minor son, Hubert Hickman, sued Caldwell Oil Company, a corporation, for damages for personal injuries sustained by Hubert Hickman while in its employ as a derrickman drilling an oil well. He was injured by falling 70 feet from the elevator of the derrick to the derrick floor, which injuries were alleged to be serious and permanent, and the direct and proximate results of certain alleged acts of negligence of appellant's employees. The parents sought $1,800 damages for themselves, and for the minor son $10,000 was sought.

On October 11, 1923, citation issued out of said cause, commanding the sheriff or constable to summon "Caldwell Oil Company, a Texas corporation, with W. H. Kokernot as president, and E. B. McKean, secretary and treasurer, upon whom service may be had," to appear at the regular term, naming it, being the 22d of October, 1923, to answer the cause; and further commanding, "And you will deliver to each of said defendants, in person, a true copy of this citation." On the same day, October 11, 1923, the citation was served upon E. B. McKean, secretary and treasurer, and return made and filed in the district court October 26, 1923.

November 3, 1923, judgment by default was rendered for $6,000 against appellant, upon a hearing before the court, a jury being waived, allotting $5,000 to the minor and $1,000 to the parents.

On November 14, 1923, appellant filed its motion to vacate and set aside the default judgment, and asked permission to file its answer to the suit. November 17, 1923, appellees answered the motion, and on the same day appellant filed its rejoinder to the answer of appellees. The pleadings of all parties were sworn to, and certain facts alleged by appellant were set forth in affidavits attached as exhibits to its motion. The court heard the pleadings, the evidence, and argument of counsel on November 17, 1923, the last day of the term of court at which the judgment was rendered, and overruled

the motion to vacate and set aside; hence this appeal.

Appellant principally contends that even though citation may have been legally issued and served upon it in time to have required it to appear and defend the suit at the October term, 1923, that such service was un-.der circumstances excusing it in not answering, and that equity and justice, under the facts and circumstances adduced on the trial of the motion to vacate and set aside the default judgment, demand that it be set aside and vacated; a meritorious defense or defenses to appellees' cause of action having been pleaded and shown in support of the motion to vacate.

[1] Appellant pleaded first as a defense to the cause of action asserted its membership in the Texas Employers' Insurance Association; that Hubert Hickman had notice of its membership and good standing in said association and accepted employment on such terms; and that under the laws of Texas he must look solely for any damages to such association. Appellant also pleaded facts constituting a defense to appellees' common-law action for damages. It also pleaded the excessiveness of the damages awarded. A meritorious defense to the suit was therefore alleged. Sufficient proof on the motion was made to sustain these defenses.

As excusing it of negligence in failing to answer though legally served with citation, the following facts were pleaded and proved: E. B. McKean, secretary and treasurer of appellant corporation, made the following affidavit concerning the service of citation upon him:

"I was served with a copy of this citation on October ——, A. D. 1923, by ——, constable of Prairie Lea precinct, and after reading it I saw it commanded him to summon W. H. Kokernot as president and myself as secretary and treasurer, and I told him I thought this citation should be served on W. H. Kokernot. He said his instructions were to serve it upon me and I accepted the copy of the citation.

"At the time I did not attach any importance to the citation for the reason that I took no active part in the management of the corporation, and as W. H. Kokernot as president was also named in the citation, I thought of course they would also serve him with citation, and I did not communicate to Mr. Kokernot or any other person connected with the corporation the fact that I had been served with this citation.

"Soon thereafter I left Prairie Lea and went to Mexico, where I have been until my return on Thursday, November 8th. On the morning of November 9th, I was in Luling when W. H. Kokernot and J. W. Rainbolt accosted me and asked if I had ever been served with citation in the case of Hickman v. Caldwell Oil Company, and I replied in the affirmative and later obtained and delivered to Mr. Rainbolt the copy of citation which was de-livered to me by the officer and which I attach to this affidavit."

W. H. Kokernot, the president of defendant corporation, made the following affidavit in support of the motion to vacate the judgment:

"A short time after the accident, I was notified by Slater & Carter, attorneys of Luling, that they held an assignment of an undivided one-half interest in the claim of Hubert Hickman for injuries sustained while at work for the company.

"A few days later, Mr. J. W. Rainbolt, whom I have always employed to attend to my personal legal needs and also for legal services connected with any concern over which I had control, informed me that Mr. Carter, attorney for Hubert Hickman, had called upon him regarding obtaining a settlement with the company for injuries alleged to have been sustained by his client, and that he had informed Mr. Carter that was a question that would have to be taken up with the company which carried our employers' liability insurance. He also assured me that the case would not come to trial until the special term of court in Lockhart in January, called especially for the trial of civil cases, stating that Mr. Carter had assured him of that fact.

"Later Mr. Rainbolt told me he had heard suit had been filed, but this was after court had been called in session at Lockhart, Tex. I assured him I had been served with no notice of this suit, and he then told me of his agreement with Mr. Carter to make the insurance company a party at the October term of court so as to avoid a continuance at the January term. He requested me to ascertain if by any chance service had been had on our secretary, E. B. McKean. I immediately made inquiry, and after ascertaining that Mr. McKean had gone to Mexico, I reported that fact to Mr. Rainbolt, and he then expressed to me the assurance that no service had been had and that the suit had only been filed by Slater & Carter in accordance with the agreement of Mr. Rainbolt with Mr. Carter that if the suit were filed before the October term of court he would file such an answer that the case would be ready for trial in January.

"I dismissed the matter from my mind and made no preparations for defense of the cause of action, as I knew we had plenty of time before the January term of court. I received my first notification of the rendering of the judgment on the evening of October 8, A. D. 1923, and immediately employed attorneys to set aside the judgment.

"Even had I known that proper service had been had and that plaintiffs had been demanding trial, I would have not been ready for trial, relying upon the statement of Mr. Carter that the case would not be tried until the January term of court and from the assurance of Mr. Rainbolt that the civil docket of the district court in Caldwell county was in such a crowded condition that there would be no chance for a trial."

Kokernot also swore that it was generally known that he was in charge of the property of appellant in Caldwell county.

The attorney, J. W. Rainbolt, by affidavit attached to the motion to vacate the judgment, swore:

"I have been a practicing attorney at Gonzales, Texas, for 23 years. A short time prior to the convening of the October term of district court at Lockhart in Caldwell county, Tex., Mr. Carter, of the firm of Slater & Carter, attorneys for the plaintiff in cause No. 6641, styled Frank Hickman et al. v. Caldwell Oil Company, called at my office in Gonzales and discussed with me the claim of Hubert Hickman, alleged to have been injured while working for the Caldwell Oil Company. He stated that he would like to make a settlement with the company for damages sustained by his client.

"I stated to him that I had no authority to discuss a settlement with him, inasmuch as I knew nothing about the accident or the extent of the injuries, and in addition that the company had not employed me in this particular case; but I presumed would do so, if suit was filed, as they customarily employed me when in need of legal services. I also told him I did not think the officers of the corporation would consider a settlement of the cause of action, as they were protected by a policy of insurance issued in accordance with the Employers' Liability Act. He then stated that he wanted to file suit at the October term of court and was undecided as to whether to sue the Caldwell Oil Company alone or join the insurance company in the proceedings. He then stated also that on account of the short time intervening before the convening of the October term of court, and the fact that the civil docket of the court contained so many cases filed prior to the time his suit would be filed, and the fact that only one week would be devoted to civil business, that it would be impossible to try the case until the January term of court. He then asked me if he decided to file suit against the Caldwell Oil Company alone, whether or not I intended to make the insurance company a party. I told him I would certainly do so. He then said that if he delayed filing suit until the January term without making the insurance company a party, that if I made it a party then it would involve another delay until the next term of court.

"He stated he preferred to sue the Caldwell Oil Company alone and asked me if he filed his suit at the October term whether or not I would file my preliminary pleas at the October term and also make the insurance company a party so that he could get a trial at the January term. I agreed to do this, and at the time I was under the impression that my agreement involved the doing of these acts whether or not he obtained service in time for the October term, and I stood ready to do so if I had been so requested. I also told him that if the facts developed that his client was injured to such an extent that he should receive more than the ordinary compensation provided by law for mere incapacity to continue his employment, that I would endeavor to assist him in having the insurance company to make a reasonable settlement with his client.

"I had no further communication with him and no notification from him that suit had been filed or request that I file an answer, which I stood ready to do in accordance with my agreement.

"At some time during the first part of the term of court at Lockhart, Mr. R. B. Ellis, an attorney at Luling, Tex., phoned to me that while in attendance upon court at Lockhart he had heard called a case against the Caldwell Oil Company, and I stated to him that I did not believe they had any service in the case as I had heard of none and that Mr. Carter had informed me that the case would not and could not be tried at the October term of court, but requested Mr. Ellis upon his next trip to Lockhart to investigate and if there was any purported service to let me know. Mr. Ellis is a frequent attendant upon the court at Lockhart, and I had no other business at the October term of court; Lockhart being situated about 33 miles from the town of Gonzales, my place of residence.

"I then notified Mr. W. H. Kokernot, the president of the Caldwell Oil Company, that Mr. Ellis had phoned me about the suit and he stated that there had been no service upon him. I then requested him to communicate with E. B. McKean, the secretary of the company, and ask him if there had been any service upon him, as they were the only two officers of the corporation upon whom service could be had. Mr. Kokernot reported back to me that Mr. McKean was absent in Mexico, so I felt sure that no service had been obtained on him, and I then told Mr. Kokernot of my agreement with Mr. Carter and that I supposed service had not been obtained, but the suit filed for the purpose of giving it precedence at the January term of the court, and that I stood ready to carry out the terms of my agreement when requested by Mr. Carter.

"Later, when in Luling, upon some business with Mr. Ellis, I went to the office of Mr. Carter for the purpose of asking him if he still desired me to make the insurance company a party at the October term of court, but found no one in the office.

"I then dismissed the matter from my mind, believing that Slater & Carter had been unable to arrange for a hearing on the preliminary pleas in district court on account of the crowded condition of the criminal docket and the fact that the court had called a special session of the district court in January for the disposition of civil cases.

"On the evening of October 8th, Mr. R. B. Ellis of Luling called me over the telephone and told me he had just heard that a judgment had been rendered against the Caldwell Oil Company. This is the first intimation that I had of any intention on the part of plaintiff to try this case at the October term of the court, as I relied implicitly on the statement of Mr. Carter to me that the case could not and would not be tried on its merits until the special term of court in January."

H. L. Carter, attorney for appellees, denied under oath that any agreement was made as contended by Rainbolt to continue the case to the January term, and could not have been, because neither knew at the time of the conversation about compromising the claim that there would be a January term, which was a special term called by the dis-

trict court to relieve the congested docket; that there was no discussion between him and Rainbolt to the effect that only one week had been assigned for civil cases at the regular term; and that said conversation could not have taken place because neither of them had been advised that only one week would be assigned to civil cases, and that the judge of the court had not set any civil cases for any particular week or day at the time of the conversation. Carter also swore that at the time of the conversation about compromising the claim with Rainbolt, that Rainbolt stated that he had no authority to act for appellant and did not undertake to act for it; and that there was no agreement made that the suit when filed should be continued until the January term of the court; that Rainbolt stated that if he was employed to represent the appellee in the suit to be filed he would file a plea in abatement and make the insurance company a party; that while the parties likely discussed the fact that the plea in abatement would have to be acted upon at the first term of the court, no agreement was made that said cause should go over until any further term of the court. The record shows that Carter notified both Rainbolt and Kokernot before the suit was filed that appellees intended to rely upon the common-law liability of appellant for the injuries inflicted. Appellees also pleaded that appellant was duly served with citation and that appellant had actual notice of the filing and pendency of the suit at the term at which judgment was rendered, and for a sufficient time before the judgment was rendered to have ascertained if the absent officer had been served with citation; and that appellant had sufficient time after actual notice of the pendency of the suit to have answered said cause at the term judgment was rendered.

[2] It is well settled in this state that though a party against whom a default judgment had been rendered was negligent, the judgment may be set aside on a showing of grounds excusing the apparent laches and showing a meritorious defense. Pullman Car Co. v. Dargan, 1 White & W. Civ. Cas. Ct. App. § 442; Foster v. Martin, 20 Tex. 118; Hester v. Baskin (Tex. Civ. App.) 184 S. W. 726; Wheat v. Ward County Water Dist. (Tex. Civ. App.) 217 S. W. 713.

In the case of Lawther Grain Co. v. Winniford, 249 S. W. 195, the Commission of Appeals held:

"In order to set aside a judgment by default, two things must appear: First, that the defendant has a good excuse for not answering or making his defense on the trial; and, second, that he has a meritorious defense."

It was held in Railway v. Kelley, 99 Tex. 87, 87 S. W. 660, that—

"If a motion to set aside a judgment by default be filed more than two days after the judgment was entered, and if sufficient excuse be not given for the failure to file an answer, or to file the motion within the time prescribed by law, it is in the discretion of the court to grant or refuse the motion."

[3] So a decision in this case resolves itself into a question of whether, under the facts and circumstances adduced on the motion to vacate the judgment, the trial court abused the discretion vested in it in refusing to set aside the default judgment.

Appellant insists that E. B. McKean, its secretary and treasurer, upon whom service was had, was excused from informing the president of such service because he was misled by the recitations in the citation, "to summon Caldwell Oil Company, a Texas corporation, with W. H. Kokernot as president and E. B. McKean, secretary and treasurer, upon whom service may be had," and further commanding, "and you will deliver to each of said defendants in person a true copy of this citation," into believing that service was also to be had upon W. H. Kokernot, the president, and hence no necessity for him to notify the president, who was in active management of the corporation, of such service of citation upon him before he left for Mexico. If there had been no other notice to appellant of the filing of such suit than the mere service of the citation upon McKean, with the recitations therein as above set out, we think appellant would have been excused in failing to answer the suit. In this conclusion we feel that we would be sustained by the case of Ry. Co. v. Burke, 55 Tex. 323, 40 Am. Rep. 808, which held that where a citation was on the local agent of a railroad company, and was by his mistake not sent to the proper person to have it in charge, and the company defaulted, that if the company had a meritorious defense it ought to have the opportunity to make it available. Or the case of Hubb-Diggs Co. v. Mitchell, 231 S. W. 425, by this court, which held that where return day stated in citation issued and served upon defendant corporation was incorrect, and where another citation giving the correct return date was served upon the corporation, but where neither the officers of the corporation nor its attorneys, to whom the first citation was referred, had actual knowledge of the service of the second citation until after default judgment was taken, the default judgment will be set aside; there being equitable excuse for the failure to appear.

But in this case we have the further fact that both appellant's president and its attorney had notice of the suit pending for a sufficient time before judgment to have made answer thereto; and having such actual notice of the pendency of the suit, and knowing of the absence of an officer upon whom

legal service might be had, the question, therefore, is whether this court would be warranted in holding that the appellant's agents and attorney were excusable for failing to inquire in the court where they knew the suit was pending, to ascertain if citation had been served upon the absent officer. The distance to the court from where appellant's president and attorney lived was only 33 miles. The distance was nearer from where the well was. If such inquiry had been made, there would have been found, for at least a week before the judgment, the officer's return on the citation showing service in sufficient time upon appellant's absent official for the term of the court at which such judgment was rendered. It cannot, we think, be seriously contended that under such state of facts appellant was not guilty of negligence in failing to make this inquiry. In order to set aside a default judgment, the mover must show by specific averments that he has not been in fault; or that he has exercised due diligence and vigilance; and if a prima facie case of negligence appears, there must be a showing of facts excusing such negligence. See 30 C. J. 329, par. 549, and cases cited there in note 52.

The only excuse appellant offers for the failure to make this inquiry is:

"That it relied upon the assurances of its attorney that an agreement had been entered into with the attorneys for the plaintiffs that this cause would not be tried upon its merits at the term at which judgment by default was rendered herein."

[4] The proof is undisputed that if this agreement was made, it was before the suit was filed; that counsel who purported to act for appellant stated he had not been employed and knew nothing about the matter and could not make any agreement which would bind appellant. But the proof is also conflicting as to whether any such agreement was ever made, and the trial court had the right on this issue to resolve it in favor of either party, and it is no abuse of his discretion to do so. We think it probable that appellant's counsel was laboring under a mistake of fact, and it certainly cannot be contended that he in any way deceived his client. Equity will not relieve a default judgment which was obtained in consequence of neglect, inattention, mistake of counsel, unless caused by the opposite party. The fault is in such cases attributed to the party himself. Only in cases where the party has been deceived or betrayed by his counsel, or in some cases of misapprehension or misunderstanding where such mistake arose from misinformation, will the courts grant relief. 34 C. J. 466; Eureka Pav. Co. v. Barnett (Tex. Civ. App.) 216 S. W. 903; Estey &

Camp v. Luther (Tex. Civ. App.) 142 S. W. 649.

In view of the above facts, we do not feel warranted in holding that the trial judge, who had all the parties before him, and who had an opportunity to know all the facts and circumstances in the case, abused the discretion vested in him in such matters, and the judgment will therefore be affirmed.

Affirmed.