### LOVE et al. v. ALLARD.    (No. 3263.) *

(Court of Civil Appeals of Texas. Texarkana. June 23, 1926. Rehearing Denied July 1, 1926.)

**1. Judgment ☞126(2)—Creditor suing receiver for misapplication of bank funds held not relieved from burden of proving such misapplication by failure of receiver and surety to appear and answer.**

Failure of receiver of bank and surety to appear and answer suit by judgment creditor for damages for misapplication of bank funds *held* not to relieve creditor from burden of proving such a misapplication as would render receiver and his surety liable to creditor.

**2. Banks and banking ☞287(3)—Transfer by receiver of assets of insolvent national bank to another bank in which he was an officer, and which took over liabilities of insolvent bank, may be lawfully done (Rev. St. U. S. § 5234, as amended by Act May 15, 1916 [U. S. Comp. St. § 9821]).**

Transfer of assets of insolvent national bank by receiver to another bank in which he was a stockholder and officer, and which took over liabilities of insolvent bank, might be lawfully done under Rev. St. U. S. § 5234, as amended by Act May 15, 1916 (U. S. Comp. St. § 9821).

**3. Banks and banking ☞287(3)—Creditor of insolvent national bank can recover from receiver only on showing that receiver has unlawfully disposed of assets which should have been applied in payment of creditor's claim.**

Creditor of insolvent national bank may recover from receiver on his official bond only on showing that receiver has unlawfully disposed of assets which should have been applied in payment of creditor's claim.

**4. Banks and banking ☞287(3)—That receiver negotiated for transfer of assets of insolvent national bank with committee representing another bank of which he was a member did not render transfer invalid.**

Transfer of assets of insolvent national bank to another bank assuming its liabilities was not rendered void because receiver was member of committee representing other bank with which he negotiated.

**5. Banks and banking ☞287(3)—Expediency of transferring assets of insolvent national bank to another bank assuming its liabilities rested within discretion of federal judge passing on receiver's application.**

Expediency of disposing of assets of insolvent national bank by transferring same to another bank and assuming its liabilities rested within discretion of judge of federal District Court to which application by receiver for permission to make transfer was presented.

**6. Banks and banking ☞287(3)—Sale of assets of insolvent national bank, pursuant to order of judge of federal District Court, was a judicial sale, which could not be collaterally assailed.**

Sale of assets of insolvent national bank, made in obedience to order of judge of federal District Court, was a judicial sale, which could not be assailed in collateral proceedings by creditor against receiver for misapplication of bank's funds.

**7. Banks and banking ☞287(3).**

Receiver cannot be held for wrongful misappropriation of funds paid or delivered in compliance with valid order of court of competent jurisdiction.

**8. Banks and banking ☞287(3)—Unfair discrimination by receiver in applying funds of insolvent national band to payment of claims' is not a wrongful misapplication of .funds to private use.**

Unfair discrimination by receiver of insolvent national bank in applying for order directing transfer of assets in his hands, and their application to payment of designated claims, does not constitute wrongful misapplication of funds to private use, rendering him liable to other creditors, where all assets in receiver's hands were applied to settlement of claims of bank.

Willson, C. J., dissenting.

Appeal from District Court, Delta County; J. M. Nelson, Judge.

Suit by J. B. Allard against R. M. Love and another. Judgment for plaintiff, and defendants appeal. Reversed, and remanded for new trial.

Love & Rutledge and H. B. Thomas, Jr., all of Dallas, for appellants.

Joel H. Berry and C. C. McKinney, both of Cooper, for appellee.

HODGES, J. This appeal is from a judgment by default, rendered against the appellant Love and the sureties on his official bond, as receiver of the Farmers' National Bank of Cooper, Tex. In January, 1921, Love was appointed receiver and executed a bond in the sum of $10,000, as required by law, with the appellant Fidelity & Deposit Company of Maryland as surety. Allard, the appellee, had been a depositor of the Farmers' National Bank, and held a claim against it amounting to the sum of $911.40, which he presented to Love for payment. Love reject-

ed the claim, and a suit followed in which Allard recovered a judgment against the bank and against Love as receiver for the sum of $1,045.07, together with cost amounting to $89.60. That judgment was thereafter presented, and payment refused on the ground that there were no funds available for that purpose. Allard then filed this suit against Love and the surety on his official bond to recover the amount of his judgment in damages for the willful misapplication and misappropriation by Love of the assets of the Farmers' National Bank. As a basis for his suit he alleged the origin and amount of his claim, its presentation and rejection. He also alleged: That the assets of the Farmers' National Bank were amply sufficient to pay in full all of the debts if they had been properly administered by the receiver; that Love had dissipated, wasted, squandered, misapplied, and converted the assets, and so managed them as to exclude Allard from sharing therein. Love had, with a group of business associates, all of whom were creditors of the Farmers' National Bank, appropriated all of the assets of the bank that had any value to their own, use and benefit under the name of the Security State Bank of Cooper, of which bank Love became a stockholder to the extent of $5,000, one-twentieth of its capital stock, and also became the active vice president and general executive officer. That Love as "receiver," with a "complete disregard of this plaintiff as a creditor of this bank, proceeded to turn all of the assets of this bank over to himself personally and to Carter Anderson, Joe Clark, E. E. Woodruff, J. A. Blackburn, J. A. Harris, J. D. Foster, and others. That said Love and his associates did not pay any money whatsoever of the assets to said receiver, and that said receiver expressly excluded from the sharing and participating in said assets this plaintiff, and denied him all of the legal rights as a creditor of said bank, and that said acts of the Farmers' National Bank and R. M. Love, receiver, amounted to a misapplication, misappropriation, and a dissipation of the trust funds in his hands, and therein and thereby said R. M. Love, receiver, willfully disregarded his official duties to this plaintiff, and willfully placed said assets beyond the reach of this plaintiff, and personally benefited thereby, and for a period of two or three years received out of said assets personally the sum of about $7,-000 per year, which said sum should have been used in the paying of the creditors of said Farmers' National Bank," etc.

The petition concludes with a prayer against Love and the Fidelity Deposit Company of Maryland as surety on his official bond. Citation was issued and served upon Love and an agent of the surety company residing in Texas. On the 9th of July, 1925, the case was called for trial. No answer had been filed by either of the defendants,

and no appearance made. Upon testimony introduced by the plaintiff in the suit, a judgment was entered in favor of Allard against both defendants for the amount sued for.

On the 29th of July, just before adjournment of the court for the term, Love and his surety appeared and filed motions, asking that the judgment against them be set aside and a new trial granted. They alleged in their motions that according to the returns of the sheriff they had not been legally cited. They also pleaded that their failure to appear and answer in the suit at the proper time was due to a misunderstanding with the United States district attorney for that district, upon whom they relied to file an answer and represent them in the trial of the case. As an additional reason why the judgment should be set aside they attacked the sufficiency of the pleadings and evidence to support a judgment for a misapplication of the funds of the Farmers' National Bank by Love. They also claimed to have a meritorious defense which they could and would, if permitted, present on another trial. The court overruled the motions, and this appeal followed.

[1] In view of the disposition which we make of the case, we shall consider only the question of the sufficiency of the evidence to support the judgment rendered. The failure of the appellants to appear and answer did not relieve the appellee of the burden of proving by legal evidence that there had been such a misapplication or misappropriation of the funds of the Farmers' National Bank as would render Love and his surety liable to a creditor of the bank. Ricks v. Pinson, 21 Tex. 508; Hurlock v. Reinhart, 41 Tex. 580; Holland v. Cook, 10 Tex. 244; S. W. Surety Ins. Co. v. G., T. & W. Ry. Co. (Tex. Civ. App.) 196 S. W. 276. The substance of the testimony relied on is as follows:

On January 15, 1921, the Farmers' National Bank of Cooper was closed, and its affairs were taken in charge by the federal Comptroller of the Currency. On January following, Love was appointed receiver, and later executed a bond in the sum of $10,000 conditioned as required by law, with the Fidelity Deposit Company of Maryland as his surety. The assets of the insolvent bank at that time amounted to the sum of $875,000, consisting of notes, bonds, real estate, etc., and an additional sum of $50,000 assessed against the stockholders. The liabilities of the bank aggregated the sum of $850,000, which consisted principally of claims of depositors. Among those claims was that of Delta county, which amounted to the sum of $420,000, and Allard's claim of $911.40. The latter was presented to Love for allowance, and for some reason was rejected. Thereafter Allard filed a suit in the district court of Delta county against Love as receiver, and recovered a judgment. An ap-

peal was prosecuted by Love, and, pending the appeal, Love and others organized the Security State Bank, with a capital stock of $100,000. One of the purposes for which the bank was organized was to take over the assets and assume the liabilities of the Farmers' National Bank. Before the organization of the Security State Bank was completed, Love and his associates had an understanding with Delta county by which it was agreed that the debt due the county would be extended and paid in future installments by the Security State Bank. After that agreement with Delta county the organization of the Security State Bank was perfected. Love took stock to the amount of $5,000, and when the bank opened he became its chief executive and vice president at a salary of $6,000 per annum, which continued for over three years. The Security State Bank took over the assets of the Farmers' National Bank from Love. It did not pay any money therefor, but assumed the debts of the receivership. Most, if not all, of the creditors of the Farmers' National Bank, except Allard, were paid in full through that arrangement with the Security State Bank. Allard's claim was never paid. It was presented to Love as executive officer of the Security State Bank and as receiver of the Farmers' National Bank, and payment was refused on the ground that no funds were available for that purpose. The record also shows that on May 17, 1921, Love presented an application to Hon. W. L. Estes, judge of the United States District Court for the Eastern District of Texas, asking permission as receiver to transfer the assets of the Farmers' National Bank to the Security State Bank. He set out the terms in the following language:

"The organization committee of said Security State Bank of Cooper proposes to purchase all the assets of the Farmers' National Bank of Cooper as such assets existed on January 15, 1921, and as listed in Exhibit A presented herewith, with all accrued or accruing interest thereon, including all collections made or that may be made of the principal and interest of such assets since January 15, 1921 (which collection shall be substituted for the assets collected in whole or in part), less all costs and expenses of the receivership or incident thereto, and also less the assets amounting to $50,000 as listed in Exhibit B presented herewith, and less all collections since January 14, 1921, made or that may be made of principal and interest of said assets scheduled in Exhibit B. Said purchase by said organization committee also includes all collections from stockholders under said assessment against stockholders heretofore mentioned, and all collections that may be made under said assessment, and all rights under law and equity to collect such assessments."

As the consideration for the transfer of the assets above enumerated, the organization committee proposed to provide for the payment in full of all debts of the Farmers' National Bank as shown by its books and as listed in Exhibit C presented with the application; it being understood that Delta county and the state of Texas would accept time certificates of deposit issued by the Security State Bank of Cooper on terms that had been agreed upon. The Security State Bank was to provide a cash fund for the amount of all deposits not included in the above-mentioned, as shown on the books of the Farmers' National Bank, and would pay all such deposits on demand, and would also settle all other debts as shown by its books to the satisfaction of the respective creditors, and all debts and claims against the Farmers' National Bank of Cooper as shown by the books should be released. That application was approved, and the receiver was directed to make settlement of the affairs of the Farmers' National Bank in the manner proposed. Thereafter, on June 7, Love filed a report in which he set forth what he had done in obedience to the order of the court carrying out the settlement. A supplemental report giving further details was also filed on October 19. Both of these were approved by the federal court. The assets retained by Love, after making the transfer to the Security State Bank, were practically worthless. Those are substantially the material facts relied on to sustain the judgment of the trial court.

Section 5234, Revised Statutes of the United States, as amended by the Act of 1916 (U. S. Comp. St. § 9821), contains the following provision:

"On becoming satisfied, as specified in sections fifty-two hundred and twenty-six and fifty-two hundred and twenty-seven, that any association has refused to pay its circulating notes as therein mentioned, and is in default, the Comptroller of the Currency may forthwith appoint a receiver, and require of him such bond and security as he deems proper. Such receiver, under the direction of the Comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders. Such receiver shall pay over all money so made to the Treasurer of the United States, subject to the order of the Comptroller, and also make report to the Comptroller of all his acts and proceedings."

[2-7] When analyzed and given their true legal significance, the pleadings of the appellee do no more than charge that Love delivered the assets of the insolvent bank into the hands of another bank, organized and called the Security State Bank of Cooper, in which he was a stockholder, and of which he became a managing officer. Under the

statute above quoted, that might have been done in a lawful manner and for a lawful purpose. The facts show that it was. It is not charged in the plaintiff's original petition that this transfer of assets was made unlawfully or wrongfully. Conceding that under certain conditions a creditor of an insolvent bank may sue the receiver on his official bond, a recovery can be had only upon a showing that the receiver has unlawfully disposed of assets which should have been applied in whole or in part to the payment of the creditor's claim. It is not contended that the order of the federal court was procured by fraudulent representations, or that Love failed in any respect to comply with its terms. The real complaint seems to be that he was a member of the committee that organized the Security State Bank, to which he delivered the assets of the old bank. The fact that Love as a receiver was negotiating with a committee of which he was a member, representing another organization, did not, under the circumstances, make the final transaction a legal nullity. The expediency of thus disposing of the assets of the insolvent bank was a matter that rested within the discretion of the judge of the federal District Court. A sale made in obedience to his order is a judicial sale, and cannot be assailed in this collateral proceeding. A receiver cannot be held for a wrongful misappropriation of funds that are paid out or delivered in compliance with a valid order of a court of competent jurisdiction.

[8] It appears from the evidence that Allard's claim was not paid because it fell within a class not included in the claims whose payment was assumed by the Security State Bank, and no money was collected by the receiver from the notes and accounts not taken over by the Security State Bank. It may be that Love was guilty of an unfair discrimination against Allard in applying for the order directing the transfer of the assets in his hands, and their application to the payment of designated claims; but such unfairness does not constitute a wrongful misapplication of funds to his own private use. All of the assets of any value under his control as receiver were applied to the settlement of claims against the defunct bank.

We think that both the pleadings and the evidence are insufficient, and for that reason the judgment will be reversed, and the cause remanded for another trial.

WILLSON, C. J. (dissenting). I do not agree that "the failure (quoting from Judge HODGES' opinion) of appellants to appear and answer did not relieve the appellee of the burden of proving by legal evidence that there had been such misapplication or misappropriation of the funds of the Farmers' National Bank as would render Love and his surety liable to a creditor of the bank."

As I understand the law, such failure entitled appellee to judgment against appellants for damages, if he stated a cause of action against them in his petition, and relieved him of the burden of proving anything more than the amount of the damages. See the authorities cited by Judge HODGES, and others as follows: Long v. Wortham, 4 Tex. 381; Guest v. Rhine, 16 Tex. 549; Watson v. Newsham, 17 Tex. 437; Trabue v. Stonum, 20 Tex. 453; Niblett v. Shelton, 28 Tex. 548; Tarrant County v. Lively, 25 Tex. Supp. 399; Boles v. Linthicum, 48 Tex. 221; Miller v. Trice (Tex. Civ. App.) 219 S. W. 229; 34 C. J. 172 et seq.; 15 R. C. L. 667. I think a cause of action was stated in the petition, and therefore respectfully dissent from the conclusion reached by the majority that the judgment should be reversed on the grounds specified in said opinion.