**SAN ANTONIO PAPER CO. v. MORGAN.**
No. 7723.

Court of Civil Appeals of Texas. Austin.
July 27, 1932.

Rehearing Denied Oct. 26, 1932.

Hertzberg & Kerchville, of San Antonio, for appellant.

Cofer & Cofer, of Austin, for appellee.

BLAIR, J.

A default judgment was rendered in favor of appellee against appellant for $12,050 damages for breach of contract. By this appeal appellant contends that its motion to set aside the judgment and to try the case upon its merits should have been granted for the following reasons:

(1) Because the evidence of one witness, strongly corroborated by other evidence, showed that the citation was served upon appellant only nine days before the beginning of the term of court at which the default judgment was rendered.

(2) Because appellant having showed no lack of diligence in answering the suit and in filing its motion to set aside the default judgment, and having pleaded a meritorious defense to the suit, the trial court abused its discretionary power to set aside the judgment and try the cause on its merits.

(3) Because the evidence was wholly insufficient to support the default judgment for damages for loss of profits resulting from breach of contract, and that loss of profits was not the true measure of damages.

The evidence adduced on the hearing of the motion showed that the suit was filed August 26, 1931, that citation issued the same day, returnable to the September term beginning September 7, 1931, and that, according to the official returns thereon, the citation was duly served upon "D. E. Newton, Secretary of the San Antonio Paper Company," the appellant corporation, on August 27, 1931, which was ten full days before the beginning of the term of court at which the default judgment was rendered. No answer was filed by appellant, and on appearance day, September 8, 1931, the court rendered judgment by default with writ of inquiry, and on the same day heard evidence on the writ and as to the amount of damages, and then rendered final judgment for $12,050. On September 14, 1931, appellant filed its motion to set aside the default judgment and to try the case upon its merits. The default judgment recited that appellant "had been duly cited to appear herein for the length of time and in the manner required by law," but that appellant had wholly made default.

Newton positively testified that he was served with the citation on Friday, August 28, 1931, at 9:30 a. m.; and appellant offered as corroborating facts and circumstances the testimony of appellant's president, its bookkeeper, and its attorney in this case, to the effect that Newton showed them the citation on Friday, August 28, 1931, and told them that it had been served upon him on that date. Each of these witnesses testified that they did not know, except from Newton, whether he had been served on August 27 or August 28, 1931. Appellant's truck driver testified that he saw an officer in the street near appellant's office on Friday, August 28, 1931, at 9:30 a. m., fitting the description of the officer who served the process, and who was later identified by the witness as being the officer he saw in the street near appellant's office. Appellant also offered evidence tending to show that Newton was a careful business man, that he owned stock in appellant corporation, and that he would have had no motive in claiming that he was served on August 28th instead of August 27th, except the inference that he had possibly overlooked calling the citation to the attention of his superior officer on Thursday, and did not care to acknowledge his negligence in that regard. On the other hand, the deputy sheriff, John Garoni, testified positively that he served the process on Thursday, August 27, 1931, at 10 o'clock a. m., as shown by his return on the citation, and that the date of service was impressed upon his mind because it was the last day of service, and because he served it on his way out to investigate a burglary of the Pincus home, which occurred the night before. Miss Mary Tyrrell, an employee of the sheriff's office, who kept a card index of the business, produced a card, dated August 27, 1931, showing that Garoni was assigned to the Pincus burglary case, and that he made his report thereon August 27, 1931. The official return on the citation in question was strongly corroborated by other witnesses and other records kept in the sheriff's office at San Antonio. The record kept by the office deputy, Mrs. Webster, showed that the citation was received August 27, 1931, at 9 o'clock a. m., delivered to Deputy Garoni for service on August 27, 1931, and served by him August 27, 1931. The post office record showed that the special delivery letter containing the citation was delivered to the sheriff at 9 o'clock a. m. August 27, 1931. Miss Tyrrell's card index showed, in substance, that the citation was received 8/27/31; assigned to Garoni 8/27/31; last day of service 8/27/31; served S. A. Paper Company; fee $1.75; executed 8/27/31; returned 8/27/31.

■ The above evidence fully sustains the finding of the trial court that the citation was served upon appellant on August 27, 1931, which was ten full days before the beginning of the term at which the default judgment was rendered, under the rules announced in the cases of Randall v. Collins, 58 Tex. 231; Pierce-Fordyce Oil Ass'n v. Staley (Tex. Civ. App.) 190 S. W. 814; Swearingen v. Swear-

ingen (Tex. Civ. App.) 193 S. W. 442; Godshalk v. Martin (Tex. Civ. App.) 200 S. W. 535; McBride v. Kaulbach (Tex. Civ. App.) 207 S. W. 576; and Jos ;)h v. Kiber (Tex. Civ. App.) 260 S. W. 269, which hold in substance, as follows:

 (1) That a default judgment will not be set aside for lack of service of process where it expressly recites that due service was had and the officer's return on the citation shows that due service was had, except upon clear and satisfactory proof that it had not been served in time, and that, where the evidence offered in support of the attack on the service is that only of one witness, it will not suffice, however credible the witness may be.

██ (2) That recitals of due service of citation in a judgment as well as in the officer's return may be disputed by only one witness, if his evidence is strongly corroborated.

██ (3) That corroborating facts and circumstances to disprove the recitations of due service in a judgment or in the officer's return must come from a source other than that of the one witness who is attacking the service of the citation.

██ Under this third rule, much of the testimony of Newton lost its probative force, particularly the evidence tending to show his careful business habits and motives which might have prompted him to testify that he had not been served on the date recited in the judgment and sheriff's return. No one saw him served with the citation, and the remainder of the corroborating testimony merely offered circumstances showing that he could have been served on August 28th, or that he thought he had been served on that date, instead of August 27th, as shown by the sheriff's return. In any event, the evidence is conflicting on the issue, and the finding of the trial court concludes the matter.

██ Since the trial court found that appellant was duly served with the citation on August 27, 1931, it follows that Newton, as appellant's agent, was guilty of negligence in failing to tell appellant that he had been served on that day; and, since this negligence of appellant's agent caused appellant to fail to file its answer in time, the trial court legally exercised its discretionary power in refusing to set aside the default judgment and to try the case on its merits.

██ The question of setting aside a default judgment is a matter within the discretion of the trial court, and, unless that discretion has been clearly abused, which is not the case here, an appellate court is not authorized to disturb the judgment. It is also settled law that, where one seeks to set aside a default judgment because of failure to answer and defend the suit, he must show that nei-

ther he nor his agents were negligent in that regard, and that, where defendant fails to show a reasonable excuse for not answering the suit in time, it is immaterial that he alleges a meritorious defense thereto. Hooser v. Wolfe (Tex. Civ. App.) 30 S.W.(2d) 728; Homuth v. Williams (Tex. Civ. App.) 42 S.W. (2d) 1048, and cases there cited. The failure of Newton to inform appellant, his employer, of the service of citation upon him until August 28, 1931, and in telling appellant that he was served on that date, was negligence, and showed no reasonable excuse for not answering the suit in time, except an excuse based upon the negligence of appellant's agent, and with which negligence appellant alone is charged.

██ We sustain appellant's contention that the default judgment is not sufficiently supported by evidence as to the amount of damages resulting from loss of profits for breach of contract, but do not sustain appellant's contention that loss of profits is not the true measure of damages in this case, nor that loss of profits on the collateral contract alleged was not recoverable under the pleadings and proof thereof.

The contract sued upon reads, in part, as follows:

"That the Morgan Printing Company promises to buy from the San Antonio Paper Company all papers required by the Morgan Printing Company to carry out its contract with the State of Texas, for a term of two years, beginning January 1, 1930, and ending December 31, 1931, or as much longer as this said State Contract continues.

"In consideration of the above contract of Purchase the San Antonio Paper Company promises and guarantees to sell said Morgan Printing Company any and all merchandise now listed or to be listed, in their catalogue and price list during the life of said Contract at San Antonio Paper Company's net cost at Austin, Texas, plus one-half the profit on all papers sold to the State of Texas under Morgan Printing Company's contract with said state.

"It is further agreed and understood that the San Antonio Paper Company is to pay freight on all shipments from Mills to Austin and Morgan Printing Company is to pay all legal freight on shipments from San Antonio to Austin.

"It is understood and agreed that these said freights shall be recognized and added to San Antonio Paper Company's original invoices in order to ascertain an actual net cost at Austin, Texas, on all papers sold to the Morgan Printing Company by the said San Antonio Paper Company.

"It is specifically understood and agreed that all profits on all papers sold under this Contract shall be the difference between the above stated actual cost at Austin, Texas, and

the price collected from the State of Texas, by said Morgan Printing Company for all of such papers sold; one-half of this total profit to go to the San Antonio Paper Company for its full share of profit on said papers, and one-half of said total profit to go to said Morgan Printing Company as its full share of profit on said papers."

After pleading the contract, appellee pleaded its breach, and the damages resulting as follows:

"That said agreement aforesaid was entered into in view of the fact that plaintiff upon his bid had been awarded the State Contract by the State of Texas to do its job printing for the two years beginning January 1, 1930, and ending December 31, 1931. That having obtained said contract with the State of Texas to do its printing the plaintiff entered into said contract aforesaid with the defendant for the purpose of securing the necessary blank papers and other merchandise incident thereto in order that he might carry out said contract with the State of Texas. That defendant well knew that this was the purpose of entering into said contract. That the said contract was mutually profitable to the plaintiff and defendant and would have been highly so, if defendant had carried out its contract as it had agreed.

"That said State contract with the State of Texas for two years would have involved the sum of to-wit: $75,000.00, which would have been paid to plaintiff by the State of Texas had he been able to have carried out his contract with the State of Texas. That 40% of this $75,000.00 or the sum of $30,000.00 would have been paid for the large amount of paper necessary to be used in doing the printing for the State of Texas and such sum of $30,000.00 would have been paid to plaintiff for such paper and incidental merchandise. That 60% of said sum of $75,000.00 or the sum of $45,000.00 would have been paid by the State of Texas to the plaintiff for the job printing work in doing said printing under said contract with the State of Texas.

"That plaintiff would have made an average of to-wit 25% profit upon said $30,000.00 worth of paper, if used and sold to the State of Texas under said contract or a profit of $7,500.00 on such paper and incidental merchandise of which profit of $7,500.00, one-half or $3,750.00 would have accrued to and belonged to defendant and one-half of such $7,500.00 or the sum of $3,750.00 would have accrued to and belonged to plaintiff under the contract between plaintiff and defendant as aforesaid. That plaintiff would have made a profit of 20% of said $45,000.00 to be paid for the said job printing work under his contract to the State of Texas as aforesaid.

"IV. That afterwards to-wit on the 28th day of January, A. D. 1931, the defendant without cause, justification or excuse breached its said contract with plaintiff aforesaid and refused to sell to plaintiff the papers and incidental merchandise stipulated and agreed in their contract as aforesaid. That thereby plaintiff was prevented from carrying out his contract with the State of Texas and also compelled to give up said valuable contract with the State of Texas. That the plaintiff on account of defendant's breach of its certain contract was unable to perform his contract with the State of Texas and so lost the benefits of his contract with the State of Texas and the benefit and profits which would have accrued to him upon such contract. That as the direct result of the breach of its contract by defendant plaintiff lost the profit on the $30,000.00 worth of paper which would have been sold to the State of Texas by plaintiff, his one-half of said profit being $3,750.00 as aforesaid. That plaintiff furthermore lost the profit on the job printing work which would have been 20% of the said $45,000.00 which would have been paid by the State of Texas as aforesaid, being the sum of $9,000.00. That thereby plaintiff lost the profit which would have accrued to him upon the papers sold in the sum of $3,750.00 and the profit which would have accrued to him upon such job printing work, in the sum of $9,000.00 making the total sum of $12,750.00, the loss of profit suffered by plaintiff by reason of the breach by defendant of its said contract aforesaid."

In view of another trial on the issue of the amount of damages, we will not discuss the evidence adduced on the trial of the writ of inquiry in detail. We find it insufficient to support the default judgment because no data, basis, or figures were offered showing, or from which the damages suffered for loss of profits on the contract with appellant or on the collateral contract with the state could be calculated with any degree of certainty as to amount. No evidence was offered showing how much paper and printing, as contemplated under appellee's two-year contract with the state, was used by the state from January 1, 1930, the date of the collateral contract, to September 8, 1931, the date of this judgment, nor how much would be reasonably expected to be used for the remainder of the two-year contract. These figures ought to be reasonably ascertainable from the agencies or departments of the government with which the contract was made. The only evidence offered as to damages was an "estimate," not based upon any data or figures, as to how much profits appellee would have made on his contract with appellant and his collateral contract with the state; and appellee's evidence that he "imagined" his total business with the state on its contract with him would have amounted to $75,000 for the two years, 60 per cent., or $45,000 of which would have been for labor and job work, on which he would have made a profit of from 18 to 25 per cent., aggregating $9,000; and that 40 per cent. of

the $75,000 would have been for paper on which he would have made a profit of $3,750, less an allowance of $700, leaving a balance of $3,050.

Under the allegations of appellee's petition he is entitled to recover such damages as loss of profits on his contract with appellant and on the collateral contract with the state as he is able to prove. The law is settled in this state that loss of profits may be recovered in an action for breach of contract; it being generally held that contracts are usually entered into with the view to future profits, and that, in suits between the contracting parties, it will be presumed that loss of profits were contemplated from a breach of the contract. And, while the earlier cases looked upon loss of profits as speculative, remote, and uncertain, the modern authorities hold that "profits, of which a person has been deprived by the fault of another, are not always speculative and remote, but in certain instances form a firm and enduring base for a claim for damages." W. H. Norris Lumber Co. v. Harris (Tex. Civ. App.) 177 S. W. 515, 517. Or, as was said by the Supreme Court in H. & T. C. Ry. Co. v. Hill, 63 Tex. 385, 51 Am. Rep. 642:

"The damages claimed by the plaintiff were the profits which he would have derived from the contract had it been carried out by the company according to its terms. This is, no doubt, the true measure of damages in the case, as now well settled by the great weight of authority. The principle is that announced in Hadley v. Baxendale, 9 Exch., 341, and adopted by this court in all cases where the question has been brought up for adjudication. Calvit v. McFadden, 13 Tex. 326; Jones v. George, 61 Tex. 345 [48 Am. Rep. 280].

"It is in effect that these damages are such as are incidental to and caused by the breach, and may reasonably be supposed to have entered into the contemplation of the parties at the time of making the contract. Williams v. Barton, 13 La. 410.

"It is useless to announce a proposition so plain as this, that a party making a favorable contract, from the performance of which he would ordinarily and in the usual course of things derive profit, is damaged to the extent of the profits that would thus arise in case of a non-performance of the contract by the party with whom he dealt.

"Such profits are naturally incident to the contract, and must have been within the contemplation of the contracting parties."

See, also, 13 Tex. Jur. pp. 198–208, and cases there cited, for a full review of this question.

We are also of the opinion that appellee's contract with appellant was entered into with expectation of deriving mutual profits from appellee's independent contract with the state of Texas. The contract in suit referred to that contract with the state and provided that appellant and appellee would divide the profits therefrom equally. Or, if the contract with the state be regarded as a collateral contract or transaction, appellee pleaded facts showing that appellant was informed that the loss of profits on the state contract would be the result of the breach of its own contract to furnish appellee the paper necessary to carry out his state contract. Such loss of profits would result from the nonperformance on the part of appellant of its contract to furnish appellee the necessary paper to carry out his contract with the state, and would be regarded as having been within the contemplation of the parties and recoverable as damages. Grand Prairie Gravel Co. v. Wills Co. (Tex. Civ. App.) 188 S. W. 680; Sun Mfg. Co. v. Egbert & Guthrie, 37 Tex. Civ. App. 512, 84 S. W. 667; Mudge & McLean v. Adams, 37 Tex. Civ. App. 186, 83 S. W. 722; 13 Tex. Jur. 204–206.

The remaining question presented is whether the case should be remanded generally, or remanded with instructions to try only the issue as to the amount of damages. The general rule is that a judgment by default precludes the defendant from asserting any defense as to liability, and limits the issue to the question of the amount of damages. In 1 Sayles, Practice, § 440, p. 415, the rule is stated as follows: "A judgment by default admits every averment in the petition, except the amount of damages."

This rule is supported by the following and many other authorities: Long v. Wortham, 4 Tex. 381; Swift v. Faris, 11 Tex. 18; Guest v. Rhine, 16 Tex. 549; Watson v. Newsham, 17 Tex. 437; Prince v. Thompson, 21 Tex. 480; Storey v. Nichols, 22 Tex. 87; Tarrant County v. Lively, 25 Tex. Supp. 399; Welch v. Holmes, 2 Posey, Unrep. Cas. 343; Johnson v. Dowling, 1 White & W. Civ. Cas. Ct. App. § 1090.

It is held in Spivey v. Saner-Ragley Lbr. Co. (Tex. Com. App.) 284 S. W. 210, 215, as follows: "But we think that, in cases of unliquidated damages, the effects of such presumption should not be so extended as to preclude a defendant from complaining by proper assignment of error on appeal, of the insufficiency of the evidence to support the judgment for the amount recovered. Whenever the damages are unliquidated, and the amount thereof depends for ascertainment upon the evidence adduced upon the trial, the defendant will not be presumed to have waived the insufficiency of such evidence to support the amount of recovery, for he is entitled to rely upon the court to render judgment only upon sufficient evidence on the subject."

This case also holds that, where the attack is sustained on appeal that a default judgment was not supported by sufficient ev-

idence, the case will be reversed "as to the amount of damages only." See, also, article 2157, R. S.; Lopez v. Mexico-Tex. Co. (Tex. Civ. App.) 281 S. W. 326; Pellum v. Fleming (Tex. Civ. App.) 283 S. W. 531, error refused in 116 Tex. 130, 287 S. W. 492; Love v. Allard (Tex. Civ. App.) 286 S. W. 581; Home Natl. Bank v. Herd (Tex. Civ. App.) 250 S. W. 250; Springman v. Heidbrink (Tex. Civ. App.) 233 S. W. 310.

But appellant contends that it pleaded a meritorious defense, and also showed excuse for failure to file answer before default, and that, under the rule announced in Dancy & Co. v. Rosenberg (Tex. Civ. App.) 174 S. W. 831, and S. W. Ins. Co. v. G., T. & W. Ry. Co. (Tex. Civ. App.) 196 S. W. 276, 277, it is entitled to have the judgment reversed and the cause remanded generally. This contention cannot be sustained, because the trial court found as above stated upon sufficient evidence that appellant and its secretary, D. E. Newton, were guilty of negligence in not presenting an answer within the time required by law.

The facts also show that the court necessarily found that the negligence of appellant's agent in failing to tell appellant the true date of service of the citation alone caused appellant to fail to answer the suit in time. It is true, as pointed out by appellant, that this court and others have held that a default judgment may be set aside if good excuse for negligence in not answering is shown, and a meritorious defense is pleaded. But those cases relate to facts showing that the acts or conduct of plaintiff or plaintiff's agents or attorneys have excused the apparent laches or negligence of defendant. Caldwell Oil Co. v. Hickman (Tex. Civ. App.) 270 S. W. 214; Chaney v. Allen (Tex. Civ. App.) 25 S.W.(2d) 1115. No such case is presented here, but the sole cause for appellant's failure to answer was the neglect or dereliction on the part of Newton with reference to the time of service of citation upon him. Appellee was not charged with, nor was he guilty of, any fraud or act which would in any manner tend to excuse the laches or negligence of appellant in failing to answer this suit before default judgment was rendered.

We therefore remand this cause with instructions to try only the issue as to the amount of damages, if any, appellee suffered as the result of breach of the contract by appellant.

Remanded, with instructions.

On Motion to Retax Costs.

Appellee moves to retax the costs as to the following items:

(1) That 73 per cent. of the transcript fees should be taxed against appellant, because that proportion of the transcript contained the bill of exception upon which appellant sought to set aside the default judgment, and which relief appellant failed to establish in this court. This part of the record furnished the basis for one of appellant's assignments of error, and was therefore a necessary part of the record. It is true that this assignment was not sustained, but appellant succeeded in reversing the judgment because of insufficient evidence to sustain the damages assessed, and as the successful party to the appeal was therefore entitled to recover all costs of the appeal.

(2) That the court reporter's fee for the statement of facts for $56.75 was excessive, and not authorized by the statutes. The court reporter has made an affidavit, which is attached to this motion, to the effect that $56.75 was incorrect, and that he was entitled to receive $13.50 for the statement of facts, being 90 cents per page for the 15 pages. Appellee contends that the statute provides for a charge of only 15 cents per hundred words; that the statement of facts contained exactly 2,900 words, which would allow only a charge of $4.35 for the statement of facts. This contention is sustained. The statement of facts is in question and answer form. The acts of the 42d Legislature (1931) First Called Session, c. 34, p. 76, § 3 (Vernon's Ann. Civ. St. art. 2239), provide that, "where such question and answer transcript is filed, such reporter shall receive as compensation therefor the sum of fifteen cents (15¢) per hundred words for the original."

The motion will be overruled in part, and in part granted.

Overruled in part, and in part granted.